IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America ex rel. )
STEVEN CULLARS, )
 )
      Petitioner, )
 )
      vs. )      Case No. 16 C 11486
 )
JACQUELINE LASHBROOK, Warden, )
 )
      Respondent. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Following a jury trial in Illinois state court, Steven Cullars was convicted of first degree murder and kidnapping and was sentenced to consecutive prison terms of forty-five and six years. Cullars has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He asserts that 1) trial counsel provided ineffective assistance in violation of the Sixth Amendment; 2) the trial court denied him due process and a fair trial by restricting his ability to present evidence of significant probative value and failing to conduct a competency hearing; and 3) the trial court denied him the opportunity to cross-examine a witness in violation of the Fifth Amendment's Confrontation Clause. For the following reasons, the Court denies Cullars's petition.

### Background

**1.    Proceedings before the trial court**

      On July 20, 2008, Cullars met with his ex-girlfriend, Kimberly Foucher, and offered to return some of Foucher's items. *People v. Cullars*, 2013 IL App (1st) 110074-

U, ¶ 3. Cullars then drove Foucher to the garage behind her mother's house, "beat her unconscious with his fists, strangled her with a belt, and stomped on her throat." *Id.* After killing Foucher, Cullars went to a liquor store twice to purchase alcohol. *Id.* Cullars then called his friend, detective Earl Parks. *Id.* Cullars left Parks a voicemail message, saying, "that he had just killed Kim and that he wanted—he wasn't playing, he was serious and [] to call him right back. *Id.* ¶ 6. When Parks arrived at the garage, Cullars approached him saying, "I can't believe I killed her." *Id.* ¶ 7. Cullars was taken into custody, where he confessed on video to killing Foucher. *People v. Cullars*, 2016 IL App (1st) 132951-U, ¶ 13.

During proceedings before the trial court, Cullars was represented by the Cook County Public Defender's office. Cullars's trial counsel sought to suppress his video confession, arguing that his statements were not made voluntarily because he was "intoxicated, depressed[,] and suicidal." Resp't Ex. K at C50-51. At the hearing on the motion, Cullars's attorney stated that "there will be evidence that [Cullars] was intoxicated and also that he was suffering from [a] mental illness." *Cullars*, 2016 IL App (1st) 132951-U, ¶ 13. After having Cullars examined by an expert, defense counsel opted not to call the expert to testify at trial on Cullars's mental health or to bring an insanity defense. *Id.* ¶ 14. Instead, defense counsel asserted a defense of self-defense. Resp't Ex. Q at CC12-13. In response, the prosecution filed a motion *in limine* asking the trial court to preclude Cullars from introducing evidence regarding his mental health, namely, evidence that he had been diagnosed with bipolar disorder in the past. Resp't Ex. K at C192, ¶ 5-6. The trial court ruled that "[t]here's a defense on file, an affirmative defense of self-defense, there's no mental health experts testifying here.

[Cullars's] mental illness is simply not at play or issue in this case, and I believe it would just be some type of red herring in the case, not supported by expert testimony, so I don't find that it is relevant." Resp't Ex. L at CC13.

On October 21, 2010, a jury found Cullars guilty of first degree murder and kidnapping. *Cullars*, 2016 IL App (1st) 132951-U, ¶ 3. Defense counsel filed a motion for a new trial based, in part, on the trial judge's ruling excluding evidence about Cullars's mental health. Resp't Ex. K at C192 ¶ 5-6. The court denied the motion. Resp't Ex. R at EE9.

Prior to the sentencing hearing, defense counsel filed an addendum to the pre-sentence investigation report, asking the court to consider Cullars's mental health as a mitigating factor. Resp't Ex. K at C193. In reviewing all the mitigating and aggravating factors, the court noted that it would consider Cullars's mental health history. *Cullars*, 2013 IL App (1st) 110074-U, ¶ 15.

The court sentenced Cullars to consecutive prison terms of forty-five and six years on the murder and kidnapping offenses. *Id.* ¶ 2.

**2. Direct appeal**

Cullars filed a direct appeal, challenging the sufficiency of the evidence on his kidnapping charge. *Id.* ¶ 16. He also sought to vacate his sentence, arguing that the trial court considered improper aggravating factors. *Id.* ¶ 26. The Illinois Appellate Court affirmed the convictions and sentence. *Id.* ¶ 1. Regarding the sufficiency of the evidence, the court concluded:

> [A] reasonable jury could find from the evidence presented that defendant deceitfully lured Foucher into his car, and drove her to the garage with the intent secretly to confine her against her will, thus proving him guilty of kidnapping under subsection (a)(3), as charged, beyond a reasonable

3

doubt.

*Id.* ¶ 23.

Regarding the sentence, the court reviewed Cullars's claim for plain error, as Cullars conceded that he failed to properly preserve the issue for review. *Id.* ¶ 26. The court stated that "[t]o obtain relief under the plain error rule, [Cullars] must show that a clear or obvious error occurred, and that the evidence at the sentencing hearing was closely balanced, or the error was so serious as to deny him a fair sentencing hearing." *Id.* ¶ 27. The court found that "[s]ince serious harm is clearly implicit in the offense of first degree murder, the trial court erred in stating that it was an applicable factor in aggravation." *Id.* ¶ 30. The court nonetheless affirmed the sentence. It stated that "[w]here it can be determined from the record that the weight placed on the improper factor was so insignificant that it did not lead to a greater sentence, remandment [sic] is not required." *Id.* ¶ 31. The court observed that the trial court "engaged in an extensive discussion of the applicability of each of the statutory factors in aggravation and mitigation"; it found that there were no mitigating factors present other than Cullars's mental health history; and it sentenced Cullars to a term of imprisonment "near the midpoint of the applicable range." *Id.* ¶ 32. The appellate court thus affirmed the sentence, stating, "we cannot say that the [trial] court's consideration of the improper factor led it to impose a harsher sentence than would otherwise have been imposed." *Id.*

**3.     Post-conviction proceedings**

Cullars then filed a *pro se* post-conviction petition. He argued that:

(1) trial counsel was ineffective for failing to request a fitness hearing and present an insanity defense (2) the trial court erred in not granting a

4

> mistrial when autopsy photos showing the victim's facial epithelial peeled back were published to the jury; (3) he should have been allowed to challenge the reliability of his confession; and (4) he should have been able to testify regarding his "non compos mentis" to support his self-defense allegation.

Resp't Ex. F at C31. Regarding his ineffective assistance of counsel claim, Cullars claimed that his attorney failed to investigate the affirmative defense of insanity despite his "well-documented psychiatric history." *Cullars*, 2016 IL App (1st) 132951-U, ¶ 4.

The trial court summarily dismissed Cullars's petition, ruling that his claims were procedurally defaulted. Resp't Ex. F at C31. Specifically, the court concluded that, because Cullars "failed to raise [his claims] on direct appeal, the claims [were] barred by the doctrine of waiver." *Id.* at C35. The court went on to say that, even if Cullars had not forfeited his claims, his petition would fail because his claims were "substantively without merit." *Id.* For example, the court found that Cullars's ineffective assistance of counsel claim lacked merit because it was "patently evident that [Cullars] was examined by a mental health expert and counsel strategically chose not to call that expert to testify . . . . [and] [t]he defense [] proceeded with the only realistic defense available based on the fact[s] of the case: self-defense." *Id.* at C39.

Cullars, represented by the Office of the State Appellate Defender, appealed the circuit court's decision. *See* Resp't Ex. F. He limited his appeal to his ineffective assistance of counsel claim. *See Cullars*, 2016 IL App (1st) 132951-U ¶ 6. Cullars asserted that he presented an "arguable claim of trial counsel's ineffectiveness for failing to have him examined for sanity" at the time of Foucher's murder. *Id.* ¶ 2. Cullars also asserted in his reply brief that a finding of procedural default would lead to a fundamentally unfair result. *Id.* ¶ 10. In that same brief, Cullars argued that his *pro se*

5

petition for post-conviction relief implicitly raised the issue that he received ineffective assistance of counsel on direct appeal. *Id.*

On February 3, 2016, the Illinois Appellate Court affirmed the circuit court's ruling that Cullars had forfeited his ineffective assistance of counsel claim. *Id.* ¶ 1. With regard to waiver, the court observed that Cullars "was present in court when counsel informed the court that she would not be calling the expert who examined him, and would not be raising an insanity defense" and that Cullars "voiced no comment or objection to counsel's representations." *Id.* ¶ 9. From this evidence, the court found that it was apparent that the matter of Cullars's mental health "was on record and could have been raised on direct appeal, but was not." *Id.* The court concluded that, because Cullars "did not attach any supporting material to his petition in support of his claim or to show that [his claims] could not have been considered on direct appeal," he had forfeited his claim of ineffective assistance of counsel. *Id.*

The appellate court went on to say that even if Cullars had not forfeited his ineffective assistance claim, he could not show that his counsel's performance fell below an "objective standard of reasonableness" or that he was prejudiced—the elements necessary to establish ineffective assistance of counsel. *Id.* ¶ 12. The court observed that the record was "replete with evidence that defense counsel was not only aware of defendant's mental health history, but thoroughly investigated it with the goal of a presenting an insanity defense, expert witness testimony, or suppressing defendant's videotaped statement." *Id.* ¶ 14. The court found that the record "belies [Cullars's] claim of ineffective assistance and that without some supporting evidence to the contrary, his bare allegation of ineffective assistance of trial counsel failed to meet the

6

arguable test for avoid[ing] summary dismissal at the first stage of proceedings." *Id.* (internal citations omitted).

The appellate court also overruled Cullars's arguments raised in his reply brief. Addressing the contention that a finding of forfeiture would lead to a fundamentally unfair result, the court found that, even with the low pleading standard for *pro se* litigants, the "concept of 'fundamental fairness' does not permit an appellate court to review errors that were never considered by the court below." *Id.* ¶ 11. With regard to Cullars's contention that his post-conviction brief implicitly raised the issue that he received ineffective assistance from counsel on direct appeal, the court stated that Cullars's "claims of ineffective assistance of appellate counsel cannot be inferred by postconviction appellate counsel merely because issues of trial error were not raised on direct appeal." *Id.*

The Supreme Court of Illinois denied Cullars's petition for leave to appeal. *People v. Cullars*, 50 N.E.3d 1140 (Ill. 2016).

4. **Habeas corpus petition**

Cullars filed the present *pro se* petition for writ of habeas corpus in December 2016. First, he asserts a claim of ineffective assistance of counsel. Pet. at 5-7. Specifically, Cullars argues that his trial counsel provided ineffective assistance because 1) she failed to challenge the prosecution's claim that he did not suffer from a mental illness despite his "well-documented history;" 2) she failed to have him examined for sanity at the time of the offense; and 3) she failed to assert an insanity defense. *Id.* at 5, § III, ¶ A; Pet'r Reply at 2, § I. Second, Cullars contends that the trial court denied him a fair trial by restricting his ability to "present evidence of significant probative

7

value," namely, evidence showing that he suffers from bipolar disorder. Pet. at 5, § III, ¶ B. Cullars also argues that the trial court denied him a fair trial by not holding a competency hearing. *Id.* at 6, § III, ¶ B. Finally, Cullars argues that the trial court denied him a fair trial by precluding questioning of detective Parks—a witness who Cullars believes would have testified positively in his favor—in violation of the Fifth Amendment's confrontation clause. *Id.* at 8, § III, ¶ C.

Respondent contends that Cullars's claims are procedurally defaulted. In the alternative, respondent argues that Cullars cannot establish a violation of his constitutional rights.

## Discussion

**A.     Procedural default**

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In the case of a *pro se* habeas petition, the petition is entitled to a liberal construction. *See Frazier v. Varga*, 843 F.3d 258, 262 (7th Cir. 2016) (A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks omitted).

A federal court will not review a claim in a habeas corpus petition unless the petitioner has fairly presented the claim through at least one complete round of state-court review, whether on direct appeal in post-conviction proceedings. *See, e.g.*, *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015). The petitioner must have raised the claim at "each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025-

8

26 (7th Cir. 2004).

Even where a petitioner has fulfilled these requirements, a federal court "may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). A state-law ground is independent if "the court actually relie[s] on the procedural bar as an independent basis for its disposition of the case." *Id*. A state-law ground is adequate if it is "established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). In other words, "it must not have been applied in a manner that imposes novel and unforeseeable requirements without fair or substantial support in prior state law or discriminates against claims of federal rights." *Clemons v. Pfister*, 845 F.3d 816, 819-20 (7th Cir. 2017) (internal quotation marks omitted).

A "state substantive or procedural rule—including a discretionary procedural rule []—can serve as an adequate ground to bar federal habeas review." *Id*. (internal quotation marks omitted) (citing *Walker*, 562 U.S. at 316). A state court's denial of a claim on the basis of procedural default is "one application of the adequate and independent state ground doctrine." *Johnson*, 786 F.3d at 504-505 (internal quotation marks omitted); *see, e.g.*, *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) ("[W]hen a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review.").

A "federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, or

9

(2) a fundamental miscarriage of justice would result if the defaulted claim is not heard." *Johnson*, 786 F.3d at 505 (internal citations omitted). Cause is defined as an "objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Id.* (internal quotation marks omitted). Prejudice is defined as "an error which so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotation marks omitted). And a fundamental miscarriage of justice exists if the petitioner's "claimed constitutional violation probably caused an innocent person to be convicted." *Id.*

Here, the record conclusively shows that Cullars procedurally defaulted the claims that he has asserted before this Court. Cullars did not raise on direct appeal or in his post-conviction proceedings the claims that the trial court denied him a fair trial by restricting his ability to present evidence that he had been diagnosed with bipolar disorder and by failing to conduct a competency hearing. Pet. at 5-6, § III, ¶ B. Similarly, Cullars did not raise during these same proceedings his contention that the trial court violated his Fifth Amendment rights by not permitting him to cross-examine detective Parks. *Id.* at 8, § III, ¶ C. Cullars raised only two issues on direct appeal: 1) insufficiency of the evidence on the kidnapping charge; and 2) consideration of improper aggravating factors in determining the sentence. *Cullars*, 2013 IL App (1st) 110074-U, ¶¶ 16, 26. He asserted no due process, Fifth Amendment, or Sixth Amendment violations. In his post-conviction proceedings, Cullars raised four claims before the trial court: 1) trial counsel was ineffective for failing to request a fitness hearing and present an insanity defense; 2) the trial court erred in not granting a mistrial when autopsy photos were published to the jury; 3) the trial court should have allowed him to

challenge the reliability of his confession; and 4) the trial court should have permitted him to testify as to his sanity the day of the crime in support of his self-defense claim. Resp't Ex. F at C31.  Cullars subsequently forfeited all but his first claim by failing to address them in his appeal after the denial of his post-conviction petition.  *Cullars*, 2016 IL App (1st) 132951-U ¶ 6.  Thus Cullars's due process and Fifth Amendment claims are procedural defaulted.

With regard to Cullars's remaining claim—ineffective assistance of counsel—the state appellate court overruled the claim on an independent and adequate state ground, specifically his waiver of the claim based on his failure to raise it before the trial court. The Illinois Appellate Court found that the matter of Cullars's mental health "was on record and could have been raised on direct appeal, but was not."  *Cullars*, 2016 IL App (1st) 132951-U ¶ 9.  Thus federal review of Cullars's ineffective assistance of counsel claim is barred, as he has presented nothing that would establish cause and prejudice or a fundamental miscarriage that would permit excusing his procedural default.

For these reasons, the Court denies Cullars's petition for writ of habeas corpus.

**B.    Certificate of appealability**

Where a federal court enters a final order adverse to the petitioner, "the district court must issue or deny a certificate of appealability."  28 U.S.C. § 2254, Rule 11(a). To obtain a certificate, the petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where a district court has denied a petition on procedural grounds, as is the case here, in order to obtain a certificate, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of

11

reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478. The Court declines to issue Cullars a certificate of appealability. It is not debatable that Cullars failed to preserve his claims in state court and, thus, forfeited his right to adjudicate those claims.

## Conclusion

For the foregoing reasons, the Court denies the petition for writ of habeas corpus and declines to issue a certificate of appealability. The Clerk is directed to enter judgment dismissing petitioner's habeas corpus petition.

                                                                           _____
                                                                           MATTHEW F. KENNELLY
                                                                           United States District Judge

Date: July 19, 2017